**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| HARRY WONG, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>FAY SERVICING, LLC,<br><br>Defendant. | Case No. 16-cv-03074-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Re: ECF 45] |

Plaintiffs Harry Wong and Maryanne Wong ("Plaintiffs") bring this suit against Fay Servicing, LLC ("Fay"), alleging that they were not extended a right to appeal the denial of their loan modification, in violation of 12 C.F.R. § 1024.41(h), 15 U.S.C. § 1692e, California Civil Code § 1788.17, and California Business and Professions Code § 17200 et seq. ("UCL"), and that Fay committed negligent misrepresentation. Second Am. Compl. 1 ("SAC"), ECF 44. Before the Court is Fay's motion to dismiss the SAC. Mot., ECF 45. Having considered the papers filed in conjunction with the motion and the parties' oral argument at the hearing on February 2, 2017, the Court GRANTS Fay's motion to dismiss for reasons stated below.

**I.   BACKGROUND**

On or about December 31, 2000, Plaintiffs purchased a residential property located at 1421 Dana Street, Palo Alto, CA 94301 (the "Property"). SAC ¶ 11. On or about March 8, 2006, Plaintiffs refinanced their loan by executing a Promissory Note and Deed of Trust secured by the Property, in favor of Washington Mutual Bank, FA. *Id.* ¶¶ 12, 13. On September 30, 2011, Plaintiffs entered into a loan modification agreement with JPMorgan Chase Bank, N.A., successor in interest to the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, FA. RJN, Ex. 2. The agreement provides that in the first one to five years, the monthly

payment would be $6,131.43 and would increase to $6,736.04 in years 6 to 40. *Id.*

On July 6, 2015, Plaintiffs were at least $246,465.97 in arrears on their loan, and a notice of default was recorded against the Property. RJN, Ex. 5. When Plaintiffs failed to cure their default, a Notice of Trustee's Sale ("NOTS") was recorded on October 27, 2015, setting the foreclosure sale for November 20, 2015. *Id.*, Ex. 6. On or about November 13, 2015, Plaintiffs submitted a loan modification application to Fay. SAC ¶ 14. Following this initial application submission, Plaintiffs provided additional application materials as requested on November 17, 2015, November 18, 2015, December 13, 2015, December 24, 2015, December 30, 2015, and January 8, 2016. *Id.* ¶ 14. On January 26, 2016, Plaintiffs received a decision on their loan modification application, denying certain loss mitigation programs but offering a plan that required a $30,000.00 down payment due by February 1, 2016 and six monthly payments of $12,253.69. *Id.* ¶¶ 16-17. At that time, the Property was scheduled for a February 22, 2016 foreclosure sale. *Id.* ¶ 19. Plaintiff Harry Wong spoke to Trecia Smith, Fay's account manager at the time, about the decision and his ability to appeal. *Id.* ¶ 20. Ms. Smith confirmed that Plaintiffs could not appeal the decision and that if Fay did not receive an acceptance of the offered plan, the February 22, 2016 trustee's sale would go forward. *Id.* In light of this representation, Plaintiffs accepted the plan and tendered the $30,000, despite feeling that they had valid grounds to appeal, especially given that their income was sufficient to support the $6,131.43 payment required by the prior loan modification. *Id.* ¶ 21.

On March 30, 2016, Plaintiff Harry Wong filed a complaint against Fay in the Santa Clara County Superior Court, and subsequently filed a first amended complaint on June 1, 2016. Notice of Removal 1, ECF 1. Fay removed the case to this Court on June 6, 2016, based on federal question jurisdiction. *Id.* Fay filed a motion to dismiss the complaint on June 13, 2016, which the Court granted with leave to amend on the basis that Plaintiff Harry Wong had failed to join indispensable parties and that the first amended complaint contained insufficient allegations relating to plausible grounds to appeal the loan modification decision. ECF 38. Plaintiff Harry Wong later joined Maryanne Wong as co-plaintiff and filed the SAC, attaching part of the letter from Fay setting forth the decision on Plaintiffs' loan modification application and the programs

1    that were denied, including a "Repayment Plan."  SAC, Ex. A to SAC.  Now pending before the

2    Court is Fay's motion to dismiss the SAC.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   DISCUSSION

Before turning to the merits of the parties' arguments, the Court addresses Fay's request for judicial notice.

### A.   Judicial Notice

Fay has requested judicial notice of seven documents, attached to the request as Exhibits 1 through 7: (1) Deed of Trust; (2) Loan Modification Agreement recorded on February 20, 2012; (3) Corporate Assignment of Deed of Trust recorded on November 8, 2012; (4) Substitution of Trustee; (5) Notice of Default and Election to Sell Under Deed of Trust; (6) Notice of Trustee's Sale recorded on October 27, 2015; and (7) Corporate Assignment of Deed of Trust recorded on November 17, 2015.  RJN, ECF 46.

Judicial notice is appropriate with respect to all the exhibits for the purpose of the motion

United States District Court
Northern District of California

to dismiss because they are documents publicly filed with the Santa Clara County Recorder. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of matters of public record). Judicial notice is appropriate with respect to Exhibits 1 and 2 on the additional ground that their "contents are alleged in [the] complaint and whose authenticity no party questions." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); SAC ¶¶ 12-13, 21.

Plaintiffs have neither opposed the request for judicial notice nor disputed the authenticity of the documents. The request for judicial notice is GRANTED with respect to all the exhibits attached to Fay's request.

### B. Violation of 12 C.F.R. § 1024.41(h)

Plaintiffs allege that Fay violated 12 C.F.R. § 1024.41 by not granting them an opportunity to appeal its decision on their loan modification application. SAC ¶¶ 35-37. In moving to dismiss this claim, Fay first argues that the SAC remains deficient for failing to demonstrate that Plaintiffs were eligible for any of the programs that Fay did not offer in its decision. Mot. 6. Second, Fay contends that the right to appeal is only available under 12 C.F.R. § 1024.41(h) if the loss mitigation application is completed 90 days or more before a foreclosure sale and Plaintiffs submitted their application only seven days before the originally scheduled foreclosure sale. *Id.* at 7-8. Plaintiffs counter that the denial of the loan modification programs might have been an error and whether they could qualify for the programs is a factual issue that should not be disposed on this motion. Opp'n 6-7, ECF 47. Next, Plaintiffs argue that their application was facially complete as of the date of the first submission, November 13, 2015, which was more than ninety days before the February 22, 2016 foreclosure sale date. *Id.* at 9.

The relevant subsection of 12 C.F.R. § 1024.41(h) governing the right of appeal is as follows:

> (1) Appeal process required for loan modification denials. If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

12 C.F.R. § 1024.41(h)(1). 12 C.F.R. § 1024.41 also clarifies when the protection of this section

applies:

> (3) Determining protections. To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, such determination shall be made as of the date a complete loss mitigation application is received.

12 C.F.R. § 1024.41(b)(3).

The main issue here is whether Plaintiffs had a right to appeal and whether Fay made an unlawful misrepresentation when it failed to inform Plaintiffs of their right to appeal. As the regulation provides, "a servicer shall permit a borrower to appeal the servicer's determination . . . ," "if a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section." The parties do not argue that paragraph (f) applies so the focus is whether Fay received Plaintiffs' "complete loss mitigation application 90 days or more before a foreclosure sale." 12 C.F.R. § 1024.41(h)(1). If not, Plaintiffs have no right to appeal and Fay's failure to inform Plaintiffs of their right to appeal is not a violation of the regulation.

It is not disputed that when Plaintiffs first submitted their loan modification application to Fay on November 13, 2015, a foreclosure sale was scheduled for November 20, 2015. As such, based on these two dates, the application was not submitted ninety days before a foreclosure sale. However, the SAC also alleges that Plaintiffs continued to supplement their application several times and do not allege a complete application until January 8, 2016. SAC ¶ 15. The SAC also alleges that the foreclosure sale was later scheduled for February 22, 2016. *Id.* ¶¶ 16-20. Alternatively, assuming that the foreclosure sale was postponed to February 22, 2016 at the time the application was completed on January 8, 2016, January 8, 2016 is still not ninety days before February 22, 2016.

In an attempt to concoct a ninety-day window, Plaintiffs argue that their application was "facially complete" on November 13, 2015, despite having to submit additional documents until January 8, 2015 and that the foreclosure date should be determined at the time the "decision was made on Plaintiff's loss mitigation application." Opp'n 10; 12 C.F.R. § 1024.41(c)(2)(iv). The Court finds this calculation untenable for several reasons. First, this theory conveniently neglects

5

1  the language of the 12 C.F.R. § 1024.41(b)(3) that requires that the "number of days between
2  when a complete loss mitigation application is received and when a foreclosure sale occurs [] shall
3  be [determined] as of the date a complete loss mitigation application is received." Plaintiffs' own
4  pleading admits that the application was not complete until January 8, 2016, thus foreclosing any
5  argument that 90 days remained until the February 22, 2016 rescheduled foreclosure date.
6  Alternatively, even assuming that the application was "facially complete" on November 13, 2015,
7  as of that date, a foreclosure sale was scheduled on November 20, 2015, far less than the required
8  90 days. Plaintiffs' argument that the foreclosure date should be determined at the time the
9  "decision was made on Plaintiff's loss mitigation application" is thus contrary to the language in
10 12 C.F.R. § 1024.41 and unsupported by any authority. *See, e.g.*, 12 C.F.R. § 1024.41(b)(3).
11 Second, Plaintiffs' theory attempts to straddle both November 13, 2015 and January 8, 2016 as the
12 date their application was completed, so to procure the later February 22, 2016 foreclosure date,
13 but also to reach back to November 13, 2015 as the date when the application was "facially
14 complete." This contorted legal gymnastics essentially masquerades an untimely application as a
15 timely one, and imposes additional obligations on Fay, that it otherwise would not have incurred if
16 it were to reject Plaintiffs' application outright and to foreclose on their property on November 20,
17 2015. The Court thus rejects Plaintiffs' interpretation of the regulation.
18      In order to understand the proper application of 12 C.F.R. § 1024.41(h), the Court finds
19 persuasive *Garmou v. Kondaur Capital Corp.*, No. 15-12161, 2016 WL 3549356, at *2 (E.D.
20 Mich. June 30, 2016). Although *Garmou* concerned a different subsection of 12 C.F.R. § 1024.41,
21 its discussion on how foreclosure dates were determined is instructive here. The defendant in
22 *Garmou* initially scheduled a foreclosure sale to be held on May 22, 2015 and the plaintiff
23 submitted a loan modification application twenty-five days before the announced sale. *Id.* at *4.
24 The defendant did not provide the plaintiff a decision on the loan application, on the ground that
25 that it had no obligation to consider the application, which was submitted only twenty-five days
26 prior to the scheduled sale and not submitted "more than 37 days before a foreclosure sale," as
27 required by 12 C.F.R. section 1024.41(g). *Id.* Although the defendant subsequently postponed the
28 sale on a week-to-week basis for more than a year until May 6, 2016, the court agreed with the

6

1  defendant that the timeline is calculated based on the date the foreclosure sale was originally
2  scheduled, and thus, the application was not timely. *Id.* The court rejected the plaintiff's
3  argument that the length of time should be "between when the application was received and when
4  the foreclosure sale was ultimately carried out." *Id.* In reaching that conclusion, the court held
5  that whether "certain foreclosure protections and other rights in the rule apply depends on the date
6  for which a foreclosure sale was scheduled at the time of a borrower's complete application." *Id.*
7  at *5 (citing 12 C.F.R. § 1024.41(b)(3)) (other citations omitted).

8        Although Plaintiffs' right to appeal depends on the ninety-day window in 12 C.F.R. section
9  1024.41(h) and not the thirty-seven window for consideration of an application in section
10 1024.41(g), the situation is analogous to that in *Garmou*. When Plaintiffs submitted their
11 application to Fay on November 13, 2015, a foreclosure sale was already scheduled for November
12 20, 2015. SAC ¶ 15; Mot. 7-8; RJN, Ex. 6. The untimeliness of Plaintiff's application, filed only
13 seven days before the scheduled foreclosure sale date, is more egregious than that of the plaintiff
14 in *Garmou*, who submitted the application twenty-five days before the scheduled foreclosure sale.
15 Accordingly, under section 1024.41(g) and consistent with *Garmou*, Fay had no obligation to even
16 consider and render a decision on Plaintiffs' application. Moreover, under section 1024.41(h),
17 Plaintiffs' untimeliness also deprived them of the right to appeal the decision.

18       Although Fay had no obligation to consider Plaintiffs' application, Fay evaluated it
19 nonetheless and after several document submissions, the application was completed on January 8,
20 2016. SAC ¶ 15; Reply 5. In the process of evaluating Plaintiffs' application, Faye postponed the
21 foreclosure sale to February 22, 2016, similar to the situation in *Garmou*, when the defendant
22 delayed the foreclosure in an attempt to give more time to the mortgagor to cure the default.
23 Opp'n 10; 2016 WL 3549356, at *4. Fay's postponement of foreclosure, however, does not
24 change the untimeliness of the Plaintiffs' application. Under this Court's interpretation of the
25 regulation, "the date for which a foreclosure sale was scheduled [would be determined] at the time
26 of a borrower's complete application." *See* 12 C.F.R. § 1024.41(b)(3); *Garmou*, 2016 WL
27 3549356 at *5. As discussed above, regardless of whether the application was considered
28 completed on November 13, 2015 for which the November 20, 2015 foreclosure date applies, or

1  January 8, 2016 for which Plaintiffs argue the February 22, 2016 rescheduled foreclosure date
2  would apply, the application was not submitted ninety days before the scheduled foreclosure date
3  as of the date of the completed application. Accordingly, Fay did not violate 12 C.F.R. § 1024.41
4  in not granting Plaintiffs a right to appeal.

5  Setting aside the fact that Plaintiffs' application was untimely under 12 C.F.R. §
6  1024.41(h)(1), the SAC also fails to sufficiently allege that Plaintiffs were eligible for any of the
7  programs that Fay did not offer in its decision. The regulation "permit[s] a borrower to appeal the
8  servicer's determination to deny a borrower's loss mitigation application for any trial or
9  permanent loan modification program *available* to the borrower." 12 C.F.R. § 1024.41(h)(1)
10 (emphasis added). Plaintiffs conclusorily allege that they had sufficient income to support a 2011
11 modification without providing any additional facts about their income. However, whether their
12 income was sufficient with respect to the 2011 modification is inapposite to the modification
13 application at issue, where the denial specified ineligibility because the loan arrears exceeded the
14 allowable amount. SAC ¶ 21; RJN, Ex. 5; Ex. A to SAC (stating that the "delinquent balance on
15 the mortgage exceeds program guidelines" and "current income is insufficient to achieve a
16 payment that would qualify for the program"). In the absence of any other facts, the SAC remains
17 deficient for not alleging plausibly that there were programs for which Plaintiffs were eligible but
18 were denied by Fay.

19  **C.  Negligent Misrepresentation**

20  Plaintiffs assert that Fay committed negligent misrepresentation, in violation of California
21 Civil Code § 1710(2) because it represented to them that a right to appeal was not available. SAC
22 ¶¶ 39-44. Fay argues that because Plaintiffs had no right to appeal the decision on their loan
23 modification application, there was no misrepresentation. Mot. 8-9. Plaintiffs reiterated that
24 Fay's representation that they had no right to appeal was false. Opp'n 13.

25  The elements of negligent misrepresentation are "(1) the misrepresentation of a past or
26 existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to
27 induce another's reliance on the fact misrepresented, (4) justifiable reliance on the
28 misrepresentation, and (5) resulting damage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

*Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009) (citation omitted).

As discussed above, the Court finds that Plaintiffs had no right to appeal because their application was not submitted 90 days or more before a foreclosure sale pursuant to 12 C.F.R. § 1024.41(h). As such, Fay's representation to Plaintiffs was not false, and this claim fails at least for not alleging a misrepresentation.

### D. Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c; California Civil Code § 1788.17

Plaintiff further asserts that Fay violated 15 U.S.C. § 1692c ("FDCPA") by failing to inform Plaintiffs that they had a right to appeal their decision on their loan modification application, effectively misleading or deceiving them. SAC ¶¶ 50-53. As a separate cause of action, Plaintiff also claims that Fay violated California Civil Code § 1788.17, which requires a debt collector to comply with the FDCPA.

Fay first argues that it is not a debt collector and that loan modification activities are not debt collection activities under either the federal or state statute. Mot. 12, 14. It next contends that both causes of action fail because the complaint alleges no false representation or deceptive means to collect any debt. *Id.* at 13-14. Plaintiffs aver that Fay is a debt collector, performed debt collection, and misrepresented to Plaintiffs their right to appeal. Opp'n 16-18.

To state a claim under the FDCPA, "a plaintiff must allege facts that establish the following: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113 (N.D. Cal. 2014) (citation omitted). California Civil Code § 1788.17 requires "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j . . . of, Title 15 of the United States Code."

Regardless of whether Fay was a debt collector or performed debt collection activities, the FDCPA cause of action and the California statutory counterpart also fail. As discussed above, Plaintiffs had no right to appeal the decision on their loan modification application so Fay did not

1  engage in any prohibited act by correctly informing them of their lack of right to appeal.

### E. California Business and Professions Code § 17200

Plaintiffs also claim that Fay violated the California Business and Professions Code section 17200 ("UCL"), based on the alleged violations of the federal regulation and the state statutes as set forth in the prior causes of action. SAC ¶¶ 68-75; Opp'n 20.

To bring a UCL claim, a plaintiff must show either an (1) "unlawful, unfair, or fraudulent business act or practice," or (2) "unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (citing Cal. Bus. & Prof. Code § 17200).

Given that "Plaintiffs' UCL claim is tethered to [the other causes of action]," this claim fails for the same reasons set forth above. Opp'n 20. The Court finds that the SAC fails to support that Fay violated any of the statutes or the regulation discussed above. Accordingly, the UCL claim is deficient for the same reason.

### F. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

Three of the factors – undue delay, bad faith, or dilatory motive – are not applicable here because the present determination on whether to grant leave does not stem from a motion for leave by Plaintiffs and there is no evidence or allegation of "undue delay, bad faith or dilatory motive" over the course of this case. Undue prejudice to the opposing party also has limited application here because the complaint has given Fay fair notice of the asserted claims.

The Court, however, finds that the remaining factors – repeated failure to cure deficiencies by amendments previously allowed, and futility of the amendment – to be dispositive. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). The Ninth Circuit has alternatively stated that the test of whether amendment would be futile is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.*; *see Utterkar v. Ebix, Inc.*, No. 14-02250-LHK, 2015 WL 5027986, at *8 (N.D. Cal. Aug. 25, 2015).

Here, all of Plaintiffs' causes of action depend on the allegation that they had a right to appeal the decision on their loan modification application despite the untimeliness of their application. Notably, Plaintiffs insisted to the Court at the hearing that they stand on their position that the foreclosure date should be determined at the time the "decision was made on Plaintiff's loss mitigation application," and that their application was facially complete on November 13, 2015. *See* Opp'n 10. The Court has determined that theory to be contrary to the regulation as discussed above. Plaintiffs have not proffered an alternative theory or facts that could render their claims viable. Furthermore, Plaintiffs have had prior opportunities for substantive amendments to address the deficiencies identified by Fay's prior motion to dismiss given that this is Plaintiffs' second amended complaint. As such, there is also a repeated failure to cure the deficiencies. Accordingly, the Court GRANTS Fay's motion to dismiss without leave to amend.

**IV.  ORDER**

For the foregoing reasons, the Court DISMISSES Plaintiffs' Second Amended Complaint without leave to amend.

Dated: March 10, 2017

_____
BETH LABSON FREEMAN
United States District Judge